UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE: STANLEY R. GILLILAND                    CASE NO. 07-11392-DWH

STANLEY R. GILLILAND                                              PLAINTIFF

VERSUS                                      ADV. PROC. NO. 07-1089-DWH

CAPITAL ONE BANK,
TSYS DEBT MANAGEMENT                                          DEFENDANTS

OPINION

On consideration before the court is a motion for class certification filed on behalf of the

debtor/plaintiff, Stanley R. Gilliland ("Gilliland"); responses to said motion having been filed by

the defendants, Capital One Bank, which technically should be identified as Capital One Bank

(USA), N.A., ("Capital One"), and TSYS Debt Management ("TDM"); and the court, having

heard and considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the parties to and the subject matter of this proceeding

pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core adversary proceeding as

defined in 28 U.S.C. § 157(b)(2)(A) and (O).

II.

FACTUAL SUMMARY

Gilliland, using a variation of his name, "S.R. Gilliland," previously filed a petition for

relief pursuant to Chapter 7 of the Bankruptcy Code in this court on October 2, 2000, Case No.

00-14566. As will be seen hereinbelow, Capital One was not scheduled as a creditor of the debtor on his original petition. Capital One was added as an unsecured creditor by an amended Schedule F filed on January 8, 2001. An order discharging Gilliland was entered in this case on January 29, 2001, which is twenty-one days after Capital One was added as a creditor. Consequently, Capital One had little, if any, involvement in Gilliland's first bankruptcy case.

On April 26, 2007, Gilliland filed the above captioned bankruptcy case pursuant to Chapter 13 of the Bankruptcy Code. He scheduled Capital One as a creditor in this second case, having a claim in the sum of $2,800.00. On May 4, 2007, TDM, purporting to be an independent contractor authorized to file claims on behalf of Capital One, filed two proofs of claim. The first reflected an indebtedness owed in the amount of $3,007.73, to which Gilliland has raised no objection. The second reflected an indebtedness allegedly owed by Gilliland in the sum of $43,396.49.

Gilliland filed an adversary complaint on June 7, 2007, seeking actual and punitive damages from Capital One and TDM, asserting that the filing of the proof of claim in the amount of $43,396.49 constituted the following:

Count I:   A willful violation of the discharge injunction;

Count II:  Filing a false proof of claim;

Count III: A violation of Rule 3001, Federal Rules of Bankruptcy Procedure; and

Count IV: A violation of the Fair Debt Collection Practices Act ("FDCPA" claim).

2

On July 10, 2007, TDM withdrew the $43,396.49 proof of claim on the basis that it was

subject to the discharge entered in Gilliland's first bankruptcy case. On July 11, 2007, it

voluntarily withdrew the $3,007.73 proof of claim, which was actually a legitimate pre-petition

claim.

Earlier in this adversary proceeding, TDM and Capital One filed a motion for a judgment

on the pleadings pursuant to Fed. R. Civ. P. 12(c). On January 31, 2008, the court granted

judgment to TDM and Capital One as to Count IV (the FDCPA claim) and denied their motion

as to the remaining counts.

On October 28, 2008, Gilliland filed an "Amended Complaint – Class Action" reasserting

Counts I, II and III as set forth hereinabove. Gilliland again asserted that Capital One and TDM

violated the bankruptcy discharge injunction by filing a proof of claim seeking to collect a

previously discharged debt. Further, he contended that this tactic was part of a systemic scheme

knowingly perpetrated by Capital One and TDM. Specifically, Gilliland alleged that prior to the

filing of the claim in his case, Capital One and TDM were fully aware that numerous proofs of

claim had been filed regarding debts previously discharged in many other bankruptcy cases. As

evidence of their willful intent, Gilliland alleged that they would quickly withdraw the proofs of

claim if an objection were filed.

Capital One and TDM responded with the assertion that Capital One received a notice of

discharge for "S. R. Gilliland." The account information reflected a Southaven, MS, address that

differed from that reflected in Gilliland's currently filed bankruptcy schedules. Additionally,

they advised that Capital One had hundreds of account holders with the name "S. Gilliland."

3

Moreover, although the social security number was a match for Gilliland's, Capital One's policy was not to identify an account holder as bankrupt unless two of three parameters—name, address, and social security number—matched exactly.  This was a procedure implemented to safeguard against erroneously reporting a customer's account in a bankruptcy status.  Capital One asserted that it was unable to match with confidence Gilliland's most recent petition with the notice of discharge for "S. R. Gilliland"and a different mailing address for the account.  Consequently, the offending proof of claim was filed because the data in Capital One's records did not meet the required criteria that Gilliland had previously obtained a discharge.  Capital One and TDM also contended that Gilliland suffered no damages as a result of the filing of the proofs of claim, particularly since they both were quickly withdrawn.

In the amended complaint, Gilliland initially defined his putative class as follows:

> Plaintiff brings this action on behalf of a class pursuant to Fed.R.Civ.P.23(a) and (b)(2) and (b)(3), made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 7023.
> The class consists of all individuals located in the United States, or in the alternative, all individuals located in the state of Mississippi who meet the following requirements:

> a.    who filed a petition for relief under the Bankruptcy Code;
> b.    who listed Capital One Bank as a creditor in the Bankruptcy proceedings;
> c.    where the debtors obtained a discharge and were issued an order of discharge:
> d.    who subsequent to the discharge filed a second petition for relief under the Bankruptcy Code;
> e.    who, when filing the second bankruptcy petition, were subjected to Capital One Bank and/or TSYS violating the discharge injunction by filing a proof of claim against the debtor despite the existence of the discharge injunction.

In his motion for class certification, Gilliland redefined the class as follows:

> Debtors who Capital One filed a proof of claim against between
> October 31, 2006 and July 31, 2007 for a debt that was owed to
> Capital One on the day before the Debtor filed a prior case and where
> Capital One is listed on the schedule of creditors on PACER, and
> where the Debtor received a discharge of debt identifiable on PACER
> and the Capital One debt was not specifically excepted by the
> discharge.

The revised class definition is somewhat confusing in its effort to be concise. When arguing the motion for certification, Gilliland's counsel conceded that the revised definition needed to be further amended to substitute the phrase "creditor mailing matrix" for "schedule of creditors." If this particular amendment were not made to the revised definition, there would be difficulty in ascertaining whether Gilliland was even a member of the proposed class. Indeed, a routine PACER search would not reveal that Capital One was listed in the "schedule of creditors" in Gilliland's prior bankruptcy case. However, the "creditor mailing matrix," following its amendment, would show that Capital One was included to receive notices regarding events occurring during the remaining administration of the case.

Generally, amendments to a class definition are liberally permitted. However, considering the factual scenario in the subject proceeding, amendments will not provide a cure for all of the problematic issues perceived by the court.

III.

## APPLICABLE LAW

In order to maintain a class action, Fed. R. Civ. P. 23, made applicable to a bankruptcy proceeding by Fed. R. Bankr. P. 7023, provides that the prerequisites set forth in Rule 23(a) must

first be satisfied, and then the proceeding must be one of the types of class actions set forth in

Rule 23(b)[1].  These provisions are set forth as follows:

### Rule 23.  Class Actions

**(a) Prerequisites** One or more members of a class may sue or be sued as
representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical
> of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the
> interests of the class.

**(b) Types of Class Actions.** A class action may be maintained if Rule 23(a) is
satisfied and if:
> (1) prosecuting separate actions by or against individual class
> members would create a risk of:
>> (A) inconsistent or varying adjudications with respect to
>> individual class members that would establish incompatible
>> standards of conduct for the party opposing the class; or
>> (B) adjudications with respect to individual class members
>> that, as a practical matter, would be dispositive of the
>> interests of the other members not parties to the individual
>> adjudications or would substantially impair or impede their
>> ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on
> grounds that apply generally to the class, so that final injunctive
> relief or corresponding declaratory relief is appropriate respecting
> the class as a whole; or
> (3) the court finds that the questions of law or fact common to class
> members predominate over any questions affecting only individual
> members, and that a class action is superior to other available
> methods for fairly and efficiently adjudicating the controversy.
> The matters pertinent to these findings include:
>> (A) the class members' interests in individually controlling
>> the prosecution of defense of separate actions:

---

[1] Hereinafter, citations to Rule 23 will be considered as Fed. R. Civ. P. 23, unless
specifically noted otherwise.

(B) the extent and nature of any litigation
concerning the controversy already begun by or
against class members;
(C) the desirability or undesirability of
concentrating the litigation of the claims in the
particular forum; and
(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(a)-(b).

In a recent employment discrimination class action lawsuit, *Wal-Mart Stores, Inc. v.
Dukes,* 131 S. Ct. 2541 (2011), the United States Supreme Court rejected an effort by three
female employees of Wal-Mart to represent a class of approximately 1.5 million women who had
been employed by the company and who had allegedly experienced gender discrimination in the
areas of promotions and compensation. The class sought billions of dollars in back pay, as well
as, injunctive and declaratory relief to redress Wal-Mart's alleged violations of Title VII of the
Civil Rights Act of 1964. *Id.* at 2547. The court reversed the grant of class certification which
had been ordered by the United States District Court for the Northern District of California and
affirmed by the Ninth Circuit Court of Appeals. *Id.* at 2561. The court did not decide that Wal-
Mart had, in fact, discriminated against women, only that the case could not proceed as a class
action. Justice Scalia authored the opinion of the court, concluding that class certification was
improper under Rule 23(a)(2), the "commonality" requirement, and Rule 23(b)(2), which applies
to injunctive relief or declaratory relief that might be appropriate for the class as a whole. *Id.* at
2556-57.

> The key to the (b)(2) class is "the indivisible nature of the injunctive or declaratory
> remedy warranted–the notion that the conduct is such that it can be enjoined or
> declared unlawful only as to all of the class members or as to none of them."
> *Nagareda,* 84 N.Y.U.L. Rev., at 132. In other words, Rule 23(b)(2) applies only

7

> when a single injunction or declaratory judgment would provide relief to each
> member of the class. It does not authorize class certification when each individual
> class member would be entitled to a *different* injunction or declaratory judgment
> against the defendant. Similarly, it does not authorize class certification when each
> class member would be entitled to an individualized award of monetary damages.

*Id.* at 2557.

In this context, the court explained that individualized claims for monetary damages

could not be certified under Rule 23(b)(2), and instead must be certified, if at all, under the

stricter requirements of Rule 23(b)(3). *Id.* at 2557-58. In so ruling, the court noted that Rule

23(b)(3), unlike Rule 23(b)(2), mandates that notice be furnished to potential class members, as

well as, that an opportunity be afforded to class members to opt out of the lawsuit. *Id.* This

meant that these requirements were necessary safeguards to preserve the constitutional due

process rights of class members whose individual claims for monetary damages would be

adjudicated if a class were certified. *See id.* at 2559.

> Permitting the combination of individualized and classwide relief in a (b)(2)
> class is also inconsistent with the structure of Rule 23(b). Classes certified under
> (b)(1) and (b)(2) share the most traditional justifications for class treatment–that
> individual adjudications would be impossible or unworkable, as in a (b)(1) class, or
> that the relief sought must perforce affect the entire class at once, as in a (b)(2) class.
> For that reason there are also mandatory classes: The Rule provides no opportunity
> for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District
> Court to afford them notice of the action. Rule 23(b)(3), by contrast, is an
> "adventuresome innovation" of the 1966 amendments, *Amchem*, 521 U.S., at 614,
> 117 S. Ct. 2231, 138 L. Ed. 2d 689 (internal quotation marks omitted), framed for
> situations "in which 'class-action treatment is not as clearly called for'," *id.*, at 615,
> 117 S. Ct. 2231, 138 L. Ed. 2d 689 (quoting Advisory Committee's Notes, 28 U.S.C.
> App., p. 697 (1994 ed.)). It allows class certification in a much wider set of
> circumstances but with greater procedural protections. Its only prerequisites are that
> "the questions of law or fact common to class members predominate over any
> questions affecting only individual members, and that a class action is superior to
> other available methods for fairly and efficiently adjudicating the controversy." Rule
> 23(b)(3). And unlike (b)(1) and (b)(2) classes, the (b)(3) class is not mandatory; class

8

members are entitled to receive "the best notice that is practicable under the
circumstances" and to withdraw from the class at their option.

*Id.* at 2558.

The court rejected the "predominance test" established by the Ninth Circuit, which

permitted the class certification of claims for monetary damages as long as the claims for

injunctive relief "predominated" over the claims for monetary damages. *Id.* at 2559-60. The

court cited favorably to the test first articulated by the Fifth Circuit Court of Appeals in *Allison v.*

*Citgo Petroleum Corp.,* 151 F.3d 402 (5th Cir. 1998), which permitted certification of claims for

monetary relief as long as that relief "flows directly from liability to the class as a whole," and

which "should not require additional hearings." *Id.* at 2560.

> In *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (CA5 1998) [sic], the Fifth
> Circuit held that a (b)(2) class would permit the certification of monetary relief that
> is "incidental to requested injunctive or declaratory relief," which it defined as
> "damages that flow directly from liability to the class *as a whole* on the claims
> forming the basis of the injunctive or declaratory relief." In that court's view, such
> "incidental damage should not require additional hearings to resolve the disparate
> merits of each individual's case; it should neither introduce new substantial legal or
> factual issues, nor entail complex individualized determinations." *Ibid.* We need not
> decide in this case whether there are any forms of "incidental" monetary relief that
> are consistent with the interpretation of Rule 23(b)(2) we have announced and that
> comply with the Due Process Clause. Respondents to not argue that they can satisfy
> this standard, and in any event they cannot.

*Id.*

The court's decision has far-reaching implications for class actions because Rule 23(b)(3)

requires plaintiffs to prove that common questions predominate over individual ones, and that a

class action is superior to other available methods for fairly and efficiently adjudicating the

controversy.

9

As set forth hereinabove, Gilliland initially attempted to define a class that would "fit into" either Rule 23(b)(2) or Rule 23(b)(3). Most recently, counsel for Gilliland advised the court that the complaint now seeks injunctive relief, as contemplated by Rule 23(b)(2), in order to "punish" Capital One for its improper conduct in filing proofs of claim that were applicable to previously discharged debts. In Gilliland's reply brief to Capital One's opposition to the motion for class certification, he states, "The sanctions, as allowed by § 105, do not focus on each class member's individual damages, rather it focuses on defendants' wrongful conduct as a whole." This tactical shift is apparently an effort to avoid the implications of *Wal-Mart Stores, Inc. v. Dukes,* as well as, the implications of *Wilborn v. Wells Fargo Bank, N.A., (In re Wilborn)*, 609 F.3d 748 (5th Cir. 2010), which will be discussed immediately hereinbelow.

In *Wilborn*, four Chapter 13 debtors, two of whom were husband and wife, brought an adversary proceeding on behalf of a debtor class against Wells Fargo, the mortgage holder/servicer, alleging that Wells Fargo charged and collected unreasonable and unapproved post-petition professional fees and costs during the pendency of their bankruptcy cases. *Id.* at 750-51. The United States Bankruptcy Court for the Southern District of Texas granted the debtors' motion for class certification and this decision was certified for a direct appeal to the Fifth Circuit Court of Appeals. *Id.* at 751. In its opinion, the Fifth Circuit initially offered the following comments concerning whether a class action could be certified by a bankruptcy court, to-wit:

> We recognize that there has been disagreement among courts as to whether a bankruptcy judge may certify a class action of debtors. However, class action proceedings are expressly allowed in the Federal Bankruptcy Rules, which provide that the requirements for class actions under Federal Rule of Civil Procedure 23 apply in adversary proceedings. *See* FED. R. BANKR. P. 7023. Although a federal

10

> rule may not extend a court's jurisdiction, *see Waffenschmidt v. MacKay*, its intended
> purpose should be upheld so long as it otherwise offends no substantive rights. *See
> In re Adams.* We see no such result here. On the contrary, if bankruptcy court
> jurisdiction is not permitted over a class action of debtors, Rule 7023 is virtually read
> out of the rules.

*Id.* at 754 (internal footnotes omitted).

> . . . There is also disagreement about whether the bankruptcy court may exercise
> jurisdiction over a *nationwide* class of debtors or is limited to exercising jurisdiction
> over debtors whose petitions are filed within the same judicial district. *Compare,
> e.g., In re Noletto*, 244 B.R. 845, 849 (Bankr.S.D.Ala.2000) (permitting nationwide
> class) *with Barrett v. Avco Fin. Servs. Mgmt. Co.*, 292 B.R. 1, 8 (D.Mass.2003)
> (holding court lacks jurisdiction over putative class members whose bankruptcies
> were discharged outside of judicial district). The class at issue in this case was
> limited to debtors within one judicial district, the Southern District of Texas.

*Id.* at 754 n. 9.

> Class actions promote efficiency and economy in litigation and permit
> multiple parties to litigate claims that otherwise might be uneconomical to pursue
> individually. *See Am. Pipe & Constr. Co. v. Utah.* These principles are no less
> compelling in the bankruptcy context. We hold therefore that the bankruptcy court
> has authority to certify a class action of debtors whose petitions are filed within its
> judicial district provided that the prerequisites for a class under Rule 23 are satisfied.

*Id.* at 754 (internal footnotes omitted).

The Fifth Circuit then addressed the requirements to maintain a class action, first

analyzing Rule 23(b)(3):

> "All classes must satisfy the four baseline requirements of Rule 23(a): numerosity,
> commonality, typicality, and adequacy of representation." *Anderson v. U.S. Dep't
> of Housing & Urban Dev.* The proposed class must also satisfy the requirements of
> Rule 23(b)(1), (2), or (3). *Maldonado v. Ochsner Clinic Found.* The bankruptcy
> court here held that, in addition to meeting the requirements of Rule 23(a), the class
> could be certified under Rule 23(b)(2) or (b)(3). Because we agree that the class
> certification was improper under Rule 23(b), we need not address Wells Fargo's
> challenge under Rule 23(a).

> Rule 23(b)(3) requires the court to find that "the questions of law or fact
> common to class members predominate over any questions affecting only individual

members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED.R.CIV.P. 23(b) The question of predominance is more demanding than the Rule 23(a) requirement of commonality. *O'Sullivan v. Countrywide Home Loans, Inc.* It requires the court to assess how the matter will be tried on the merits, which "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class." "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor.* "Additionally, the superiority analysis 'requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case.'"

> Plaintiffs' claims here fail under the predominance and superiority inquiries because individual issues for each class member, particularly with respect to damages, override class concerns when we consider how the case must be tried.

*Id.* at 755 (internal footnotes omitted).

> The bankruptcy court certifying this class action recognized that differing events had occurred within each individual debtor's bankruptcy case, but the court held that because all plaintiffs had fees and costs charged to their accounts by Wells Fargo during the pendency of the bankruptcies, common issues of law or fact predominate over individual issues. But this ignores how and why certain fees were charged or paid. The circumstances surrounding the charging of fees
> require an individual assessment of the claims. . . . Such varying circumstances will require the court to examine each individual bankruptcy case.

*Id.* at 756.

Next, the court addressed Rule 23(b)(2):

> For similar reasons, class certification is improper under Rule 23(b)(2). The Rule 23(b)(2) inquiry focuses on whether the putative class defendant "has acted or refused to act on grounds that apply generally to the class" so that injunctive or declaratory relief is appropriate for the class as a whole. *See* FED.R.CIV.P. 23(b)(2). Again, the circumstances and court orders differ between the judges and cases. And the injunctive or declaratory relief sought by the plaintiffs must predominate over claims for monetary relief. *Maldonado*, 493 F.3d at 524. This requires that requests for monetary relief be incidental to the class-wide injunctive or declaratory relief so that plaintiffs will be automatically entitled to the monetary remuneration once liability is established for the class. *See Allison*, 151 F.3d at 416. The monetary relief must be "capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each

12

class member's circumstances." *Id.* at 415. The Plaintiffs' request for disgorgement
of fees is not merely incidental to the sought-after injunction and declaration. The
amount that each plaintiff was charged, perhaps the amount that is "reasonable," and
any amount to be disgorged will depend on the specific circumstances of each class
member and whether and how fees were imposed. *See Maldonado*, 493 F.3d at 524.
We therefore disagree with the bankruptcy court's determination that disgorgement
amounts may be determined with mathematical certainty absent individual hearings.
The class certification under Rule 23(b)(2) was therefore improper.

*Id.* at 757 (emphasis supplied).

In its conclusion, the Fifth Circuit, considering the facts presented in *Wilborn*, determined

that a class action could not be maintained under either Rule 23(b)(2) or Rule 23(b)(3).

IV.

THE MASSACHUSETTS ADVERSARY PROCEEDING

In a Chapter 13 bankruptcy case filed by William L. Galley and Laura A. Galley, in the

United States Bankruptcy Court for the District of Massachusetts, Eastern Division, Case No. 06-

12142-JNF, Phoebe Morse, the United States Trustee for Region I, as plaintiff, filed an adversary

proceeding against Capital One Bank (USA), N.A., as defendant, Adversary Proceeding No. 08-

01272. While the complaint was not filed as a class action, nor did it request class certification,

the factual allegations are practically identical to the Gilliland adversary proceeding now pending

before this court. The U.S. Trustee sought injunctive and other relief against Capital One

because of its practice of filing proofs of claim in bankruptcy cases subsequently filed by debtors

where the claims had been previously discharged in previous bankruptcy cases. A Stipulated

Final Judgment and Order was entered in that proceeding on November 20, 2008. The impact

and far-reaching effect of the Massachusetts adversary proceeding and the aforementioned final

judgment were significant in that they encompassed all debtors nationwide who had experienced

13

the proof of claim filing practice employed by Capital One. This specifically included the two

claims that were filed in Gilliland's bankruptcy case, which will be discussed in more detail

hereinbelow.

The sworn declaration of Michael Blair Smith, the Director of the Bankruptcy Operations

Department of Capital One Bank (USA), N.A., provides a thorough description of the events that

transpired in the Massachusetts adversary proceeding. Smith was also deposed in the current

adversary proceeding on October 7, 2010. An accurate summary of his sworn declaration was

included in Capital One's Memorandum in Opposition to Plaintiff's Motion for Class

Certification at pages 4-6. It is set forth hereinbelow:

> Capital One became aware of a potential problem with its claim filing
> processes in the fall of 2006 when TDM received about a dozen objections from
> trustees claiming that TDM had filed proofs of claim on Capital One's behalf on
> previously discharged debts. (Leicher Dep. (Otero Decl. Exh. D) at 51-52.) TDM
> proposed to Capital One that it engage American Info Source, an aggregator of
> bankruptcy records, to "scrub" Capital One's claims files – i.e., to double-check
> whether any of the claims Capital One had filed had already been discharged. (Id.
> at 56-57.) TDM engaged American Info Source in early 2007 (id. at 57), and after
> development of the software necessary for the "scrubbing" (id. at 63-64), TDM and
> Capital One identified approximately 7,500 claims they thought had probably been
> filed on discharged debts. (Id. at 62.) Capital One started to remedy these claims in
> the fall of 2007. (Smith Dep. (Otero Decl. Exh. E) at 76.)
>
> In October 2008 the United States Trustee for Region 1 commenced an
> adversary proceeding in the Massachusetts Bankruptcy Court seeking, inter alia, an
> injunction "permanently enjoining and restraining Capital One from improperly
> maintaining collection procedures that cause them to violate section 524." (Trustee's
> Compl. (Otero Decl. Exh. F) at 7.) The next month, that court entered the Stipulated
> Final Judgment and Order (attached as Exh. G to the Otero Decl.) establishing the
> remediation process, and setting out the procedures by which the Trustee could
> determine that Capital One had corrected its claims filing process.    The
> Massachusetts Bankruptcy Court appointed an Auditor to oversee the process and to
> report to the court on Capital One's progress in identifying and compensating those
> against whose estates erroneous claims had been filed. (Id. at § II.)
>
> The settlement first required Capital One to identify all proofs of claims it had
> filed on consumer accounts between January 1, 2005 and November 29, 2008.

Having prepared this list – the Master Claims Report – Capital One was then charged with determining which of the claims on this list were filed erroneously. This subsequent list – the Erroneous Claims Report – would identify those persons to whom Capital One would owe a refund if the erroneous claim had resulted in a distribution to Capital One. (Id. at § III.)

In the process of carrying out these procedures, it became apparent that the plan envisaged by the settling parties faced a considerable logistical problem. In order to determine whether any particular claim on the Master Claims Report was in fact erroneous, Capital One would have to review court files concerning the debtor's initial bankruptcy to determine whether, for example, the debt to Capital One in that earlier bankruptcy had been discharged, or whether the debt was on the same account as the claim in the second bankruptcy. These, and a number of other factors – the so-called "exclusionary criteria" described in § III.G of the Order – essential to determining if the second claim filing had indeed been erroneous, would require access to court files nationwide dating back as far as 1990, long before such records were available on PACER or any other electronic source. Indeed, it turned out that some of these records were not even available in paper form in court archives.

To work around this problem, Capital One proposed (and the court agreed) that it would not employ the exclusionary criteria in preparing the Erroneous Claims Report. Thus, the final Erroneous Claims Report contained claims that were in fact not erroneous, for to avoid the logistical difficulties just described, some claims appeared on that list even though, had the court files been obtainable and the exclusionary criteria been employed, it would have been determined that the claims had not been erroneous. As a consequence, the approximately 15,000 claims on the Erroneous Claims Report contain both erroneous claims and claims that were not erroneous but were deemed to be erroneous and listed on that report because it was practically impossible to determine their true status. (See Massachusetts Amendment Motion (Otero Decl. Exh. H), describing the revised process for preparing the Erroneous Claims Report.)

Capital One reimbursed all those persons on the Erroneous Claims Report for any distributions it received as a result of the erroneous claims. The Order also established a process by which persons could claim for expenses they incurred in seeking to have Capital One withdraw its claims. (Order at § V.) To date, Capital One has paid out approximately $2.4 million in reimbursement and compensation, and has paid the Auditor and her law firm over $3 million for their services.

Under the Order, the auditing and reporting process ends after the claims made by Capital One in 2010 are analyzed, unless more than 100 new erroneous claims (or claims deemed erroneous) are identified as having been filed in 2010. (Order at § IV.C.) The Order states that "this Court shall retain jurisdiction of this matter for all purposes, including construction, modification and enforcement of this Order." (Id. at § I.X.)

As noted hereinabove, paragraph III in the Stipulated Final Judgment and Order in the

Massachusetts proceeding provided for the preparation of the following:

1.    Master Claims Report - This included all accounts in which a proof
      of claim was filed between January 1, 2005, and November 20,
      2008. (This spans beyond Gilliland's proposed class period.)

2.    Prior Case Report - This effectively screened the Master Claims
      Report to identify all of the accounts owed by debtors who had
      filed a bankruptcy case prior to the case in which the claim
      indicated in the Master Claims Report was filed.

3.    Erroneous Claims Report - This further screened the Prior Case
      Report to determine which claims had been erroneously filed in the
      subsequent bankruptcy case.

4.    Distribution and Refund Report - This contained information
      regarding the distributions Capital One had received from the
      bankruptcy estates because of the erroneously filed proofs of claim,
      as well as, the refunds issued by Capital One in repayment of these
      distributions.

Paragraph IV of the stipulated order required that the aforesaid four reports should be

filed and processed annually for two years after the entry of the order. The audits would be

extended an additional year if the Erroneous Claims Report reflected a total exceeding 100

erroneous claims. In paragraph V, Capital One was required to withdraw all claims on the

Erroneous Claims Report if the claim had not already been withdrawn.

If a claim objection or an adversary proceeding had been filed prior to the withdrawal of

the claim, the Auditor was required to send a copy of the order to the affected debtor notifying

the debtor how to recover the expenses incurred in contesting the claim up to the time of the

withdrawal. The debtor was given 90 days to submit a claim for expenses. Thereafter, Capital

One's payment of costs and expenses would constitute a full and final resolution of all issues

relating to the claim, as well as, any alleged damages.  A debtor, who did not seek reimbursement

after notification, did not waive or release his or her claim for any damages relating to the filing

of the erroneous claim.  Gilliland apparently did not avail himself of this opportunity and has

elected to proceed in this court.

Capital One has refunded distributions that it had received in the sum of $2,319,335.56.

These refunds, however, represent, for the most part, monies that Capital One should not have

received since the underlying claims had been previously discharged in the debtors' prior

bankruptcy cases.  More significantly, Capital One has already paid over $3 million to the

Auditor and her law firm for this initiative.

Considering all that has transpired in the Massachusetts proceeding, this court is of the

opinion that, for all practical purposes, injunctive relief has been granted to all debtors that were

adversely affected by Capital One's flawed proof of claim filing practice.  The payment of $3

million thus far to the court appointed Auditor is not considered an insignificant sanction.

Additional injunctive relief could well be considered "piling on."

V.

GILLILAND'S PRIOR BANKRUPTCY CASE

Having now had the opportunity to review the court file applicable to Gilliland's first

bankruptcy case (00-14566), which the court can judicially notice, the court would point out the

following:

17

Crossroads Christian Bookstore, <u>362 Stateline Road</u>, <u>Southaven, MS 38671</u>, was a former business operated by Gilliland.  It was listed as a co-debtor on several obligations initially scheduled by Gilliland. The debt owed to Capital One was related to this business.

Gilliland's address was reflected as 3250 Oakwood Cove, Olive Branch, MS 38654.  He also listed three other addresses as the location of principal assets of a business debtor, one of which was <u>362 Stateline Road</u>, <u>Southaven, MS.</u>

Capital One (not Capital One Bank (USA), N.A.), P.O. Box 85015, Richmond, VA 23285-4754, was added to an Amended Mailing Matrix on January 8, 2001, referencing a \$20,000 debt for "purchase of merchandise for store 1-5-00."

At the time the amendments were filed, Capital One was furnished a notice that it was being added as a creditor in the case by Gilliland's then bankruptcy attorney.  Capital One received a notice of Gilliland's discharge, dated January 31, 2001, less than a month after being added as a creditor on Amended Schedule F.  The Chapter 7 trustee had previously filed his Report of No Assets on November 20, 2000.  An order closing the case was entered on February 14, 2001.

The two claims against Gilliland that were included in the Erroneous Claims Report generated in the Massachusetts proceeding are set forth as follows:

ECR-ID 2868; Debtor's Name - Crossroads Christian Bookstore; Address -
Southaven, MS, 38671-0000; Claim Amount - \$43,396.49; Case No. - 07-11392,
Northern District of Mississippi.

18

ECR-ID 8684; Debtor's Name - Stanley R. Gilliland; Address - Olive Branch,

MS, 38654-5907; Claim Amount - $3,007.73; Case No. - 07-11392, Northern

District of Mississippi.

VI.

CONCLUSION

As noted above, Gilliland, through his counsel, indicated that he proposes to pursue this

cause of action pursuant to Rule 23(b)(2), seeking injunctive relief and sanctions from Capital

One and TDM. The class definition does not address this most recent approach, nor does it

provide a suggestion as to how the contemplated sanctions are to be quantified or disbursed. In

*Wilborn*, the Fifth Circuit stated that, insofar as Rule 23(b)(2) is concerned, the request for

monetary relief should be incidental to the class-wide injunctive relief so that the plaintiffs will

be automatically entitled to the monetary remuneration once liability is established for the class.

609 F.3d at 757. Additionally, the monetary relief must be capable of computation by means of

objective standards and not dependent in any significant way on the intangible, subjective

differences of each class member's circumstances. *Id.* This court perceives that there are

significant variances in Gilliland's circumstances when compared to those of other potential class

members.

In its defense, Capital One indicated that it was concerned about erroneously categorizing

and reporting an individual in a bankrupt status. Two of three criteria had to match exactly to

preclude the filing of a proof of claim in a subsequent bankruptcy case. These criteria were

applied when the proof of claim regarding the previously discharged debt was filed in Gilliland's

second bankruptcy case. Even though the social security numbers were a match, Capital One did

not "connect the dots" between S.R. Gilliland, who had a business account under the name

Crossroads Christian Bookstore at one address, and Stanley R. Gilliland at his residential

address, notwithstanding that the residential address was listed in both cases. The Erroneous

Claims Report from the Massachusetts proceeding even reflected the account debtor as

Crossroads Christian Bookstore, which, in the court's opinion, is a mitigating factor in Capital

One's favor.

Illustrating this point is an excerpt from the deposition of Michael Blair Smith at pages

167-68, to-wit:

> Q.   It had to have been the thought process of the leadership of the recoveries
> department of Capital One to say, why is this occurring, why are we
> having this problem; and do we have some policies that, maybe, are the
> root cause of it?  Did that go through your head?

> A.   I discussed earlier that we certainly investigated why a situation
> might occur and that we would file a claim, a proof of claim on a
> debt that had been discharged in a previous bankruptcy.

> And the conclusion of that work was that there were a multitude of
> scenarios that could happen, starting with how the debtor
> completed the paperwork with his name, address, how he listed
> Capital One on his schedules, how the post office sent his mail to
> us, how we received and routed the information; and then
> ultimately, how we processed the information.

> So there could be circumstances at each point in that process that
> could result in our system of record not having any indication of
> that previous bankruptcy.

Capital One's involvement in Gilliland's first filing, a no-asset Chapter 7 case, was non-

existent. Capital One was not initially scheduled as a creditor and was added to the case only

twenty-one days before Gilliland received his discharge.  While the court is not aware of all the

details surrounding Gilliland's account with Capital One that related to Crossroads Christian

Bookstore, the structure of this account, particularly the business address in another town, created

confusion insofar as Gilliland's two bankruptcy filings were concerned.  This, of course, does not

provide an excuse to Capital One and TDM for filing the offending proof of claim.  It is,

however, a notable difference in Gilliland's factual circumstances from those of other potential

class members.

       Not only were there different reasons behind Capital One's filing a proof of claim

applicable to a previously discharged debt, the events that occurred after a filing also varied.

Insofar as Gilliland was concerned, once he and his attorney became aware of the offending proof

of claim, he filed an adversary proceeding seeking actual damages, punitive damages, costs, and

attorney fees, without making any request to Capital One to withdraw the claim.  No payments or

distributions were made to Capital One by Gilliland's Chapter 13 trustee because of the claim,

and it was withdrawn on July 10, 2007, only 33 days after the complaint was filed, and only 67

days after the proof of claim was filed.

       The following is a non-inclusive list of some of the possible variances that could occur

after the filing of an offending proof of claim by or on behalf of Capital One:

1.     Once a notice was received from the debtor or the debtor's attorney, the
       offending proof of claim, applicable to a discharged debt, was promptly
       withdrawn by Capital One.

2.     In other cases, the filing of an objection to an offending proof of
       claim resulted in its withdrawal.

3.    Perhaps some debtors, like Gilliland, filed an adversary proceeding without making an initial request to Capital One to withdraw the claim.

4.    In some cases, unlike Gilliland's, Capital One actually collected payments as a result of the filing of the offending proof of claim.

5.    The fees, costs, and expenses incurred by debtors in their efforts to have offending proofs of claim withdrawn could vary from being only nominal to perhaps substantial.

6.    Similar to Gilliland, some debtors may have sought actual damages, punitive damages, costs, and fees incidental to the filing of the offending proofs of claim.

If the class definition is amended as proposed by Gilliland's counsel to substitute

"creditor mailing matrix" for "schedule of creditors," additional class member discrepancies

could well arise. The inclusion of Capital One on the "creditor mailing matrix" could actually

refer to another one of several Capital One entities, not specifically Capital One Bank (USA),

N.A. Capital One Bank (USA), N.A., may not have been the creditor in the prior bankruptcy

case. Consequently, if the inclusion of "Capital One" on the mailing matrix resulted in a mis-

identification of Capital One Bank (USA), N.A., as the miscreant creditor when, in fact, it was

not, the debtors in that case could erroneously be identified as class members when they

obviously should not be.

Another problem with the proposed class definition involves reaffirmation agreements

that were approved in the prior bankruptcy case. In the Discharge of Debtor order, reaffirmed

debts are generically excepted from the discharge. They are not specifically identified by or

linked to particular creditors. Consequently, the definition as revised could erroneously capture

debts that were previously reaffirmed and excepted from discharge because they are not

22

recognized automatically as reaffirmed debts. In addition, if a reaffirmed debt was not fully

satisfied following the closing of the prior case, Capital One would have a legitimate right to file

a proof of claim applicable to that debt in any subsequent bankruptcy case filed by the same

debtor.

Notwithstanding the fact that Gilliland's latest iteration seeks only injunctive relief

pursuant to Rule 23(b)(2), the remedy he demands is monetary sanctions for Capital One's

"wrongful conduct as a whole." When comparing the factual circumstances that are relevant to

Gilliland to those that are applicable to other potential class members, a perplexing conundrum

arises as to how any award of sanctions could be allocated ratably to those debtors affected by

Capital One's claim filing practices.

Without question, the injunctive effect of the Stipulated Final Judgment and Order,

entered in the Massachusetts adversary proceeding, dilutes Gilliland's request for additional

injunctive relief. This court does not perceive a need to enter a duplicative order, particularly

since the Massachusetts order applies to all debtors nationwide who were adversely impacted by

Capital One's inadequate screening procedures. Remedial measures have been implemented

along with continued monitoring at a significant expense. The reference to expense specifically

includes Capital One's court ordered payments to the appointed Auditor, as well as, the payments

of costs, fees, and expenses to affected debtors as compensation for their efforts in having the

offending proofs of claim withdrawn.

In keeping with the standards articulated by the Fifth Circuit, this adversary proceeding

certainly cannot be certified as a class action pursuant to Rule 23(b)(3). The imposition of the

23

yet undefined sanctions that would be tied to Gilliland's request for injunctive relief would not

comport with the *Wilborn* decision either. As set forth throughout this opinion, there are

significant differences in the events that impacted the putative class members. The differences

begin with the justification, or lack thereof, for filing a proof of claim that was applicable to a

previously discharged debt. They include payments made by certain debtors on claims that had

already been discharged. They end with a variety of fees, costs, and expenses that were incurred

to remove the offending claims. These differences are indicative to this court that monetary relief

in the form of sanctions would not be "capable of computation by means of objective standards."

Any sanctions would be significantly dependent "on the intangible, subjective differences of each

class member's circumstances." This is not a "one size fits all" cause of action.

Although this court is obviously influenced by the fact that the "bridge has already been

crossed" as a result of the Massachusetts adversary proceeding, this court could not certify a Rule

23(b)(2) class, <u>nationwide or within this judicial district</u>, because of the factual disparities that

exist among the potential class members. There is, therefore, no reason to consider the

requirements imposed by Rule 23(a)(1)-(4). The motion for class certification, filed on behalf of

Gilliland, is not well taken and must be overruled.

A separate order consistent with this opinion will be entered contemporaneously

herewith.

This the 6ᵗʰ day of July , 2012.

DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE

25